ROBERT A. DOLINKO (SBN: 076256)
rdolinko@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, 18th Floor
San Francisco, California 94111-3600
Telephone: (415) 984-8200
Facsimile: (415) 984-8300

MAE HAU (SBN: 293641)
mhau@nixonpeabody.com
NIXON PEABODY LLP
300 South Grand Avenue, Suite 4100
Los Angeles, California 90071-3151
Telephone: (213) 629-6000
Facsimile: (213) 629-6001

Attorneys for Defendants
HERTZ TRANSPORTING, INC. and
DTG OPERATIONS, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

L'TANYA MCCALLUM, an individual,

Plaintiff,

vs.

HERTZ TRANSPORTING, INC., a Delaware corporation; DTG OPERATIONS, INC., an Oklahoma corporation; and DOES 1 through 50, inclusive,

Defendants.

Case No.: 5:19-cv-00858

**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. § 1332(d) AND 28 U.S.C. § 1441; EXHIBITS**

**[Riverside County Superior Court Case No. PSC1802801]**

[Filed concurrently with Declarations of LaKeisha Carter and Mae Hau]

Complaint Filed: May 14, 2018
Trial Date: None Set

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF L'TANYA MCCALLUM AND HER ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that defendants DTG Operations, Inc. ("DTG") and Hertz Transporting, Inc. ("HTI") (together, DTG and HTI are "Defendants") file this Notice of Removal. The above-entitled case is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) and is one that may be properly removed to this Court pursuant to 28 U.S.C. § 1441. In compliance with 28 U.S.C. § 1446(a), Defendants assert the following grounds for removal:

## I. TIMELINESS OF REMOVAL

1. On May 14, 2018, an action was commenced in the Superior Court of the State of California, County of Riverside, entitled *L'Tanya McCallum v. Hertz Transporting, Inc., and DOES 1-50*, as Case No. PSC1802801 (the "State Court Action"). The Complaint was served on HTI alone on or about May 23, 2018.

2. On August 21, 2018, counsel for HTI informed counsel for plaintiff L'Tanya McCallum ("Plaintiff") that DTG is, and at all material times was, Plaintiff's employer and that DTG is and was the proper defendant in this matter. (Declaration of Mae Hau ("Hau Decl."), Ex. A.) Counsel for HTI stated that Plaintiff was employed by HTI for a period of time until October 2015. (*Id.*) In October 2015, Plaintiff's employment with HTI ended and she became an employee of DTG. (*Id.*)[1] Plaintiff alleges in the Complaint that her causes of action arose during the period December 24, 2015 to May 10, 2018. Plaintiff was employed by DTG alone at all times during this period. Counsel for HTI thus informed counsel for Plaintiff that HTI was willing to enter into a stipulation allowing Plaintiff to amend the Complaint to dismiss HTI and add DTG to the case. (*Id.*)

[1] Plaintiff's history of employment in this regard is confirmed by Human Resources Business Partner LaKeisha Carter. *See* Carter Decl. ¶5.

3. Plaintiff did not amend the Complaint to add the proper defendant until April 17, 2019, when Plaintiff filed an Amendment to Complaint substituting DTG for DOE 1. (Hau Decl., Ex. F.)

4. "The [removal] statute provides two thirty-day windows during which a case may be removed – during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005) (citing 28 U.S.C. § 1446(b)). Thus, where the amount in controversy is not clear on the face of the initial pleading . . . the thirty-day period for removal does not "begin ticking until a defendant receives 'a copy of an amended pleading, motion, order or other paper' from which it can determine that the case is removable." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006) (citing 28 U.S.C. § 1446(b)(3)).

5. "The proper party to a claim of employment discrimination is Plaintiff's employer." *Curtis v. BCI Coca-Cola Enter. Bottling Cos.*, No. 1:13-cv-1939 AWI-BAM, 2015 WL 251765, at *3 (E.D. Cal. Jan. 20, 2015); *see also* 42 U.S.C. § 2000e(b,f); *Allen v. Pacific Bell*, 212 F. Supp. 2d 1180, 1200 (C.D. Cal. 2002) (finding that company which was not Plaintiff's employer is not a proper party to the lawsuit and cannot be held liable under either federal or California discrimination law); *Jackson v. Cnty. of Sacramento Dep't of Health & Human Servs.*, No. 2:16-cv-00920 MCE GGS PS, 2017 WL 4923287, at *5 (E.D. Cal. Oct. 31, 2017) (stating that the only proper party for discrimination claims is the entity for which plaintiff worked).

6. When Plaintiff initiated the State Court Action against HTI, it could not remove the case because it was not Plaintiff's employer, it could not reasonably be held liable for Plaintiff's claims, Plaintiff at the time was still employed by DTG,

and HTI could not reasonably determine or assert that the amount in controversy was over $75,000.

7. Plaintiff's amendment adding DTG as a defendant on April 17, 2019, rendered this action removable because DTG was Plaintiff's employer at all material times and, as a consequence, the amount in controversy is now in excess of $75,000, exclusive of interest and costs.

8. This Notice of Removal is timely under 28 U.S.C. § 1446(b) and (c) because Defendants are filing this Notice of Removal within 30 days after the case became removable once Plaintiff amended the complaint to add the proper party, and within one year after commencement of the action.

## A. The State Court Action

9. Plaintiff filed the State Court Action on May 14, 2018. True and correct copies of Plaintiff's Summons and Complaint, along with the papers which accompanied the Complaint, are attached as Exhibit B to the concurrently filed Declaration of Mae Hau.

10. On June 22, 2018, HTI filed its Answer to the Complaint. (Hau Decl., Ex. C.)

11. On October 30, 2018, HTI filed a Case Management Conference Statement stating that "[t]he parties agree to permit Plaintiff to amend the Complaint to substitute Hertz Transporting, Inc. for DTG Operations, Inc." (Hau Decl., Ex. D.)

12. Plaintiff filed a Case Management Conference Statement on November 5, 2018. (Hau Decl., Ex. E.)

13. On April 17, 2019, Plaintiff for the first time filed an Amendment to Complaint substituting DTG for DOE 1. (Hau Decl., Ex. F.)

14. On May 1, 2019, the Superior Court held a trial setting conference. The Superior Court found that the case was not at issue because of Plaintiff's Amendment to Complaint adding DTG as a party, and DTG had not yet appeared or

answered the Complaint. The Superior Court declined to set a trial date and extended the trial setting conference to July 3, 2019.

15. Accordingly, Defendants' Notice of Removal is to be filed no later than May 14, 2019. *See* 28 U.S.C. § 1446(b)(3) (30-day deadline); 28 U.S.C. § 1446(c)(1) (removal must be filed within one year after commencement of action); Fed. R. Civ. P. 6.

16. This Notice of Removal filed on May 7, 2019, is timely pursuant to 28 U.S.C. § 1446(b)(3) and (c)(1).

17. Defendants have not received or filed any papers or pleadings in the State Court Action other than those attached as Exhibits B through F to the Declaration of Mae Hau filed herewith.

## B. <u>JURISDICTION</u>

18. The Court has original diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), and it may be removed to this Court pursuant to 28 U.S.C. § 1441(b). Specifically, and as explained more fully below, this action involves citizens of different states. As also explained more fully below, the amount in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs.

19. At the time this lawsuit was filed, Plaintiff was a citizen of the State of California. Plaintiff testified at her deposition on April 15, 2019 that she lived in California from 2006 until June 2018 when she went to Maryland to live with her sister temporarily. (Hau Decl., Ex. G.) Plaintiff further testified that she does not intend to remain in Maryland, that she is in the process of re-registering her car in California, her belongings remain in a storage facility in California, and she intends to return to live in California. (*Id.*)

20. At the time this lawsuit was filed, HTI was, and still is, a Delaware corporation (its state of incorporation) with its corporate headquarters (*i.e.*, its

principal place of business) in the State of Florida. (Declaration of LaKeisha Carter ("Carter Decl."), ¶ 3.)

21. At the time this lawsuit was filed, DTG was, and still is, an Oklahoma corporation (its state of incorporation) with its corporate headquarters (*i.e.*, its principal place of business) in the State of Florida. ("Carter Decl."), ¶ 4.)

22. HTI and DTG were not and are not a citizen of the State of California, and Plaintiff was not and is not a citizen of Delaware, Florida, or Oklahoma. Therefore, this case satisfies the citizenship requirement for the exercise of this Court's jurisdiction under 28 U.S.C. § 1332(a).

## III. AMOUNT IN CONTROVERSY

23. Removal jurisdiction exists where original jurisdiction would also have existed, and the removing defendant bears the burden of establishing jurisdiction. 28 U.S.C. § 1441(a); *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992). If a complaint on its face alleges that the amount in controversy exceeds the minimum required to invoke diversity jurisdiction ($75,000), and all of the other requirements for diversity jurisdiction are met, the action is removable. 28 U.S.C. § 1332. The court may, for removal purposes, look to the removal papers for underlying facts establishing the jurisdictional limit. *Gaus, supra*, 980 F.2d at 566 (9th Cir. 1992). If the allegations in a complaint do not conclusively demonstrate that the amount in controversy exceeds the jurisdictional minimum, the removing party need only demonstrate by a preponderance of the evidence that the jurisdictional minimum amount is in controversy. *Singer v. State Farm Mutual Auto. Ins. Co*., 16 F.3d 373, 376 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co*., 102 F.3d 398, 404 (9th Cir. 1996).

24. Defendants deny that Plaintiff is entitled to any recovery in this action, and by filing this Notice of Removal, Defendants do not waive any defenses that may otherwise be available to it. While Plaintiff's Complaint does not clearly

specify the amount of damages she seeks, it pleads claims for: (1) disability discrimination; (2) failure to accommodate a disability; (3) failure to engage in the interactive process; (4) retaliation; and (5) failure to prevent discrimination and retaliation. Plaintiff also seeks damages for, among other things, lost wages, "emotional distress, humiliation, mental anguish and embarrassment," punitive damages, and attorneys' fees. (*See* Complaint, ¶ 24 and Prayer for Relief.)

25. "If the complaint does not clearly specify damages, the court may examine facts in the complaint and evidence submitted by the parties." *Simmons*, 209 F. Supp. 2d at 1031. The Court may consider "jury verdicts in similar cases," so long as such cases are "factually identical or, at a minimum, analogous to the case at issue." *Mireles v. Wells Fargo Bank, N.A.*, 845 F. Supp. 2d 1034, 1055 (C.D. Cal. 2012). Analogous cases provide evidence of the amount of emotional distress damages likely to be at issue in the case. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) ("In determining the amount in controversy, the district court properly consider[s] [*inter alia*] . . . emotional distress damage awards in similar [] discrimination cases in [the same state]."); *Simmons*, 209 F. Supp. 2d at 1033-34 (considering damages awarded in a "not perfectly analogous" case as evidence "that emotional distress damages in a successful employment discrimination case may be substantial"). Likewise, analogous cases also provide evidence of the amount of punitive damages likely to be at issue in the case. *Id.* at 1033 ("To establish probable punitive damages, defendant may introduce evidence of jury verdicts in cases involving analogous facts."); *see also Ansley v. Metro. Life Ins. Co.*, 215 F.R.D. 575, 578 (D. Ariz. 2003) (relying on evidence of similar "disability insurance bad faith" cases in which punitive damages were awarded in determining that the minimum amount in controversy had been met). All claims in a single-plaintiff case, as here, are aggregated to determine the amount in

controversy. *See Bank of California Nat'l Assn. v. Twin Harbors Lumber Co.*, 465 F.2d 489, 491 (9th Cir. 1972).

26. Plaintiff alleges in the Complaint that Defendants discriminated and retaliated against her because of her disability. Plaintiff claims that she suffered a workplace injury on December 24, 2015, which caused her to suffer the disabilities of Post-Concussive Syndrome and Myofascial Pain Syndrome. (Complaint, ¶ 9.) Plaintiff alleges that she took a leave of absence and was released back to work with restrictions of "no climbing," "no lifting more than 10 pounds," a "sit down job," and the limitation of a "6-hour maximum" work day. (Complaint, ¶¶ 11-12.) Plaintiff alleges that Defendants failed to accommodate these restrictions and scheduled her to work on holidays and most nights, usually by herself, while other managers worked on shifts with other employees. (Complaint, ¶ 13.) Plaintiff claims that because she was all alone at work, she frequently had to walk, stand, and lift, all in violation of her work restrictions. (*Id.*) Plaintiff also alleges that her supervisor unfairly reprimanded her and ultimately placed her on an unjustified performance improvement plan ("PIP"). (*Id.*) Plaintiff claims that after she received the PIP, she complained that Defendants were not accommodating her work restrictions, which exacerbated her disabilities. (Complaint, ¶ 14.) She claims that instead of taking corrective action to prevent the discrimination and retaliation, Plaintiff was encouraged to go out on, and did take, another leave of absence. (*Id.*) Plaintiff alleges that when she sought to return to work on or about May 4, 2017, Defendants ignored her request. (Complaint, ¶ 15.) Plaintiff claims that she filed a complaint with the California Department of Fair Employment and Housing ("DFEH") on or about May 12, 2017, and that Defendants thereafter retaliated against her for filing this complaint by placing her in a "transition to work program" from July to November 2017, wherein she earned substantially less than what she made as a manager for Defendants. (Complaint, ¶¶ 15-16.) Plaintiff claims that she

sought to return to work for Defendants since November 2017, but that Defendants have ignored her efforts to return to work. (Complaint, ¶ 17.) Plaintiff's salary in 2017 was $1,692.32 every two weeks. (Carter Decl., ¶6.) While Defendants sharply dispute Plaintiff's assertions, the foregoing represents Plaintiff's testimony for purposes of establishing the amount in dispute in this lawsuit.

27. Given Plaintiff's allegations, she was denied reinstatement and denied her salary from May 4, 2017 to at least April 17, 2019. Even assuming there would have been no increase in her salary during that period, Plaintiff allegedly was harmed by lost income in the amount of approximately $84,600 (i.e., 50 bi-weekly pay periods of $1,692.32).

28. In *Leuzinger v. County of Lake*, No. C06-0398 SBA, 2007 Jury Verdicts LEXIS 43160 (N.D. Cal. Oct. 12, 2007), the plaintiff suffered a wrist injury that required her to take medical leave. The plaintiff claimed that when she returned from her medical leave with restrictions, her employer did not allow her to return to work in her previous capacity and forced her to retire. The plaintiff sued for disability discrimination and brought claims under both the Family Medical Leave Act and the California Family Rights Act. The jury found for the plaintiff on the issue of discrimination based on her disability. It found that the plaintiff's employer failed to engage in the interactive process and failed to accommodate her disability. The jury awarded the plaintiff $1.26 million in emotional distress damages alone.

29. In *Landau v. County of Riverside*, No. CV07-06807 DSF (OPx), 2010 Jury Verdicts LEXIS 23407 (C.D. Cal. Feb. 12, 2010), the plaintiff alleged that she was terminated based on her disability and retaliated against for claiming disability rights and taking medical leave. The plaintiff alleged that she had severe anxiety for which she took leave under the Family Medical Leave Act. She alleged that her employer denied her requests for accommodations to address her symptoms so she

could return to work, and then fired her for job abandonment. The jury found for the plaintiff on her claims for disability discrimination, failure to reasonably accommodate a disability, and retaliation. The jury awarded her $250,000 for past pain and suffering and $250,000 for future pain and suffering.

30. In *McMurray v. City of Burbank*, BC247304, 2003 Jury Verdicts LEXIS 50167 (Cal. Super. 2004), the plaintiff claimed that she was retaliated against for taking time off work for medical problems, including being passed over for promotions and having supervisory duties taken from her. She further claimed that her employer failed to provide reasonable accommodations for her disability. The plaintiff sued for disability discrimination, failure to accommodate, retaliation, and violation of the California Family Rights Act. The jury found in favor of the plaintiff on her claims of disability discrimination and failure to provide reasonable accommodation and awarded her $537,000 for emotional distress damages.

31. In *Garcia v. Electrical Industry Services Bureau, Inc.*, CGC-06-454840, 2007 Jury Verdicts LEXIS 36598 (Cal. Super. 2007), the plaintiff, a data entry clerk, became disabled and went on medical leave. Her employer fired her after the 90th day of her leave, stating that her disability period had exceeded 90 days, which was the company limit per the terms of a collective bargaining agreement with the plaintiff's union. The plaintiff was not given advance warning that she would be fired if she failed to return to work on the 90th day of her leave. She sued for disability discrimination, retaliation, failure to prevent discrimination, failure to accommodate, and failure to engage in the interactive process. After trial, the jury found for the plaintiff and awarded her $200,000 in emotional distress damages alone.

32. In *Martin v. Arrow Electronics Inc.*, No. SACV041134JVS, 2006 WL 4050133 (C.D. Cal. 2006), the plaintiff, a manager, brought claims against his employer for disability discrimination, wrongful termination, and failure to

accommodate his disability. The plaintiff alleged that his anxiety disorder limited his ability to work, but that his employer terminated his employment rather than offer him a reasonable accommodation. After trial, the jury found that the employer failed to accommodate the plaintiff by terminating him without first determining if he could perform other jobs with or without accommodation, or by not extending his leave of absence and offering him a different job upon return. The jury awarded the plaintiff $1 million for pain and suffering.

33. Plaintiff also seeks recovery of attorneys' fees. (Complaint, Prayer for Relief ¶ 6.) Because "attorneys' fees are recoverable as a matter of right to the prevailing party under FEHA," the Court may properly consider estimated attorneys' fees in determining the amount in controversy. *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002) ("The Ninth Circuit clearly considers attorneys' fees when assessing [the] amount in controversy."). Courts have stated that it "only considers in its calculation of the amount in controversy attorneys' fees that are incurred as of the date of removal." *Bloomer v. Serco Mgmt. Servs., Inc.*, 2016 WL 4926409, at *3 (C.D. Cal. 2016).

34. Here, Plaintiff filed her Complaint on May 14, 2018, and Defendants filed their Notice of Removal on May 7, 2019. The parties have thus litigated the case for nearly one year. Plaintiff has: (1) issued Interrogatories and Requests for Production of Documents to HTI; (2) responded to HTI's Special Interrogatories and Requests for Production of Documents; (3) produced documents; (4) engaged in meet and confer communications regarding Plaintiff's discovery responses; and (5) defended the first day of Plaintiff's deposition, which required Plaintiff's counsel to travel from Westlake Village to the deposition location in Ontario, a distance of at least two hours each way. At a minimum, Plaintiff's counsel has no doubt expended at least 60 hours as of the date of the Notice of Removal.

35. Assuming an hourly rate of $500, a very conservative estimate of the attorneys' fees thus far incurred by Plaintiff would be $30,000. *See Fitzgerald v. City of Los Angeles*, No. CV 03-01876 DDP, 2009 WL 960825, at *10 (C.D. Cal. Apr. 7, 2009) (finding rates of up to $710 to be a reasonable reflection of the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation") (citation omitted). These attorneys' fees should be considered in determining the amount in controversy as Plaintiff seeks to recover attorneys' fees in connection with her claims.

36. Given the allegations in Plaintiff's Complaint, and despite the fact that Defendants vigorously dispute these allegations, Defendants have carried their burden of demonstrating that the amount in controversy in this matter exceeds the jurisdictional minimum of $75,000. In lost wages and attorneys' fees alone, the amount in dispute is over $100,000. Above and beyond this figure, Plaintiff has claimed damages for emotional distress.

37. Given Defendants' net worth and annual income which are matters of public record, punitive damages as sought by Plaintiff (to which Defendants assert she is not entitled) are also likely to exceed $75,000 should a trier of fact believe all of the factual statements asserted in Plaintiff's Complaint.

38. While Defendants have produced solid evidence in support of its Notice of Removal, it is noteworthy that in *Dart Cherokee Basin Operating, LLC v. Owens*, 135 S. Ct. 547 (2014), the Supreme Court held that a defendant's notice of removal of a case from state to federal court need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; it does not need to contain evidentiary submissions.

39. For the foregoing reasons, this action is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. section 1332, and which may be removed by Defendants to this Court pursuant to 28 U.S.C. section 1441(a), in

that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and is between citizens of different states.

**Venue**

40. Venue lies in the United States District Court for the Central District of California, pursuant to 28 U.S.C. sections 84(c)(3) and 1441(a) because this Court's territorial jurisdiction includes Riverside County, California, where the State Court Action was filed and is pending.

41. Defendants will serve written notice of the filing of this Notice of Removal to Plaintiff as required by 28 U.S.C. § 1446(d) and will file a Notice of Removal with the clerk of the Superior Court of the State of California in and for the County of Riverside, as further required by that statute.

For all of the foregoing reasons, Defendants respectfully submit that the State Court Action is removable to this Court under 28 U.S.C. §§ 1332(a) and 1441(b).

Dated: May 7, 2019

NIXON PEABODY LLP

By: /s/ Robert A. Dolinko
Robert A. Dolinko
Mae K. Hau
Attorneys for Defendants
HERTZ TRANSPORTING, INC. and DTG OPERATIONS, INC.